**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jaime GARZA, Defendant–Appellant.**

**No. 89–1078**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Sept. 7, 1989.

Nancy M. Simonson, Canales & Associates, Corpus Christi, Tex., for defendant-appellant.

Randell P. Means, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, WILLIAMS and DUHE, Circuit Judges.

CLARK, Chief Judge:

### I

Jaime Garza ("Garza") pleaded guilty to two counts of using a communication facility to facilitate a narcotics offense in violation of 21 U.S.C. sections 843(b) & (c). As part of the plea agreement, Garza stipulated to facts that establish the more serious offense of conspiracy to possess mari-

juana with the intent to distribute it. He was sentenced to two consecutive forty-eight month prison terms, one year of supervised release, and a $10,000 fine. Garza appeals from the imposition of this sentence, arguing that the district court failed to follow proper sentencing procedures and misapplied the sentencing guidelines. He does not challenge the underlying conviction. Because the sum total of the sentences imposed does not exceed the sentence that the stipulated facts would permit under the guidelines, we affirm.

## II

In January of 1988, two undercover agents from the Drug Enforcement Agency ("DEA") began negotiating with Garza for the sale of a quantity of marijuana. On January 13, Garza met with the agents and agreed to buy 1000 pounds of marijuana from them for $308,000. The next day, Garza met with the agents to inspect a marijuana sample. He said that he was pleased with its quality but that he was not yet ready to complete the purchase because "his people" had not shown up as planned. He stated that he would go to Houston, Texas to get his own money for the deal. On January 15, Garza spoke by telephone to Agent DeLaFlor and said that he was ready to come to Fort Worth, Texas to complete the transaction. They agreed that Garza and an associate would arrive on January 18 to view the entire load of marijuana and complete the purchase.

On January 18, Garza met Agent DeLaFlor in Hurst, Texas and informed DeLaFlor that he had a new proposal. Garza stated that he wanted to purchase 2000 pounds of marijuana for $450,000 and an additional 600 pounds for $150,000. Agent DeLaFlor agreed to the proposal, subject to the approval of DEA Agent Villarreal, who was posing as the major supplier. Garza spoke that evening by telephone with Agent Villarreal, who agreed to Garza's terms. On January 19, Garza and an associate, Roberto Escobar ("Escobar"), accompanied Agent DeLaFlor to inspect the 2000 pounds of marijuana to be purchased. After extensive examination by Garza and Escobar,

Garza rejected the load because much of the marijuana had mildewed. Garza suggested, however, that he was willing to purchase about 200 to 1000 pounds of the load that was still good. Agent DeLaFlor rejected the offer, suggesting that another load would be available in four to five days. Later that day, Garza spoke with Agent Villarreal on the telephone and agreed to purchase 2000 pounds of marijuana from the upcoming load. Garza also encouraged Agent Villarreal to sell him the satisfactory portion of the first load because his buyers were in town. Agent Villarreal declined the offer.

On January 26, Garza called Agent Villarreal on the telephone to tell Villarreal that he was ready to examine the new load and complete the purchase. The next day, Agent DeLaFlor took Garza and Escobar to inspect approximately 2000 pounds of marijuana. After close inspection by Garza and Escobar, Garza said that the marijuana was acceptable. Garza then picked up an associate, Francisco Chapa ("Chapa"), at the Dallas/Fort Worth airport to participate in the transaction. A fourth associate, Daniel Lopez ("Lopez"), also joined them. Finally, on January 28, Agent DeLaFlor met with Garza and his associates at a hotel to complete the purchase. Garza informed Agent DeLaFlor that his buyers had only brought $200,000 to purchase 500 pounds of marijuana because the buyers were afraid of being robbed. After some discussion, Agent DeLaFlor agreed to sell 500 pounds at that price if Garza would produce another $150,000 that evening to increase the size of the purchase. Garza agreed. Agent DeLaFlor then directed his associate to stay with one of the buyers, Roger Gordon Dubois ("Dubois"), to count the money, while he, Garza, and the other buyer, William Joseph Farrell ("Farrell"), went to see the marijuana. Shortly after Agent DeLaFlor left, Dubois and Lopez were arrested at the hotel. Garza, Escobar, and Farrell were later arrested at the marijuana storage site.

Garza was indicted on four counts, including one count of conspiracy to possess marijuana with the intent to distribute it, in violation of 21 U.S.C. section 846, and three

counts of using a communication facility (the telephone) to facilitate the commission of a narcotics offense, in violation of 18 U.S.C. sections 843(b) & (c). Pursuant to a plea bargain with the United States Attorney, Garza pleaded guilty to two counts of using a communication facility to facilitate a narcotics offense, in exchange for the dismissal of the conspiracy charge and the other facilitation charge. Garza also stipulated to an extensive statement of facts. The district court approved the plea agreement and adopted the presentence report and Garza's stipulation of facts as the court's findings of fact. The presentence report scored Garza's convicted offenses at level 14 and his criminal history as category I. The guideline range for level 14 offenses in that criminal history category is 15 to 21 months imprisonment. However, the district court indicated at sentencing that it would depart from the guidelines because the stipulated facts contained "sufficient elements of the real offense...." The court also cited "the seriousness of the offense, the amount of drugs involved, [and] the amount of money involved" as additional reasons for departure. The district court then imposed the maximum statutory prison term of 48 months for each convicted offense and ordered the terms to be served consecutively. 18 U.S.C. § 843(c).[1]

On appeal, Garza argues that the district court improperly departed from the sentencing guidelines because the guidelines adequately take into consideration the circumstances identified by the court as its basis for departure. Garza also contends that the sentence violates the guideline policies and provisions requiring courts to group like offenses to arrive at a single sentence and to impose concurrent prison terms. Because a correct application of the guidelines would permit the sentence imposed by the district court, we affirm.

### III

The sentencing guidelines provide that when a guilty plea contains a stipulation of facts "that specifically establishes a more serious offense than the offense of conviction, the court shall apply the guideline in such chapter most applicable to the stipulated offense." Sentencing Guidelines, § 1B1.2(a); see also id. § 1B1.2, commentary; *United States v. Lopez*, 875 F.2d 1124, 1129 (5th Cir.1989). The Sentencing Commission explained the "practical basis" for this rule:

> In cases where the elements of an offense more serious than the offense of conviction are established by the plea, it may unduly complicate the sentencing process if the applicable guideline does not reflect the seriousness of the defendant's actual conduct. Without this exception, the court would be forced to use an artificial guideline and then depart from it to the degree the court found necessary based upon the more serious conduct established by the plea.

Sentencing Guidelines, § 1B1.2, commentary 1.

The district court faced a similar situation here. The stipulated facts established the more serious offense of conspiracy to possess marijuana with the intent to distribute it. The district court felt compelled to depart from the guidelines so that Garza's sentence would reflect the seriousness of his actual conduct. The district court then imposed the maximum statutory prison term for each convicted offense and ordered the terms to be served consecutively. Section 1B1.2(a) was promulgated to address these types of situations.

Once the court determines the appropriate guideline sentence for the more serious stipulated offense, the court must formally implement that sentence in terms of the actual convicted offense. See id. § 5G1.1 et seq. If the guideline sentence for the stipulated offense exceeds the maximum statutory sentence for the actual convicted offense, the guidelines provide that "the statutory maximum shall be the guideline sentence." Id. § 5G1.1(a); see also id. § 1B1.2, commentary 1 (the maximum statutory sentence for the convicted offense limits the sentence that may be imposed for

---

**1.** The district court also imposed a one year term of supervised release and a $10,000 fine.

a more serious stipulated offense). For multiple-count convictions, the guidelines direct the court to order consecutive sentences so that the aggregate sentence equals the guideline sentence for the more serious stipulated offense:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment [appropriate under the guidelines], then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.

*Id.* § 5G1.2(d).

Applying these rules to the present case, the stipulated facts establish that Garza engaged in a conspiracy to possess at least 500 pounds of marijuana with the intent to distribute it. Under the guidelines, that offense carries a base offense level of 26. *Id.* § 2D1.1(a)(3). In addition, the stipulated facts demonstrate that Garza was a key figure in the conspiracy. He negotiated the proposed transactions with the DEA agents and with the ultimate intended buyers, Dubois and Ferrell. He planned the drug transactions and exercised the decision making power. He also directed the efforts of co-conspirators Escobar, Chapa, and Lopez. Under these facts, the guidelines call for a four-level increase in the offense level for Garza's aggravating role as "an organizer or leader of a criminal activity that involved five or more participants...." *Id.* § 3B1.1(a), *see also id.* § 3B1.1, commentary 3. Adding four levels to the base offense level of 26 yields a total offense level of 30. An offense level of 30 carries a minimum sentence of 97 months imprisonment for an individual with Garza's category I criminal history. *Id.* Ch. 5, Part A, Sentencing Table.

Even if Garza's guilty plea warranted a two-level reduction in the offense level for acceptance of responsibility, *see id.* § 3E1.1 (reduction discretionary), the sentence imposed by the district court would have fallen within the appropriate sentencing range. For an individual with Garza's criminal history, an offense level of 28 carries a sentencing range of 78 to 97 months imprisonment. *Id.* Ch. 5, Part A, Sentencing Table. The district court imposed a total sentence of 96 months.

Since the maximum statutory sentence for using a communication facility to facilitate a narcotics offense is 48 months, 21 U.S.C. § 843(c), the guidelines direct the district court to impose consecutive maximum sentences on both convicted counts in order to match, as nearly as possible, the guideline sentence for the more serious stipulated offense of conspiracy to possess marijuana with the intent to distribute it. Sentencing Guidelines, § 5G1.2(d). The minimum guideline sentence for the conspiracy offense is 97 months. Because the court cannot impose a sentence that exceeds the statutory maximum of 48 months for each convicted offense, the correct sentence under the guidelines is 48 months for each offense, to be served consecutively, for a total imprisonment of 96 months.

## IV

The district court felt compelled to depart from the guidelines because of the serious nature of Garza's criminal conduct. The correct procedure under section 1B1.-2(a) is to follow the sentencing guidelines for the more serious stipulated offense. However, the district court's failure to articulate its sentence in this manner did not affect any substantial right of the defendant because the sentence imposed by the district court was permissible under a correct application of the guidelines. The sentence is therefore

AFFIRMED.