# BRAXTON *v.* UNITED STATES

No. 90–5358.   Argued March 18, 1991—Decided May 28, 1991

SCALIA, J., delivered the opinion for a unanimous Court.

*Stephen J. Cribari* argued the cause for petitioner. With him on the briefs were *Fred Warren Bennett* and *Mary M. French.*

*Stephen J. Marzen* argued the cause for the United States. With him on the brief were *Solicitor General Starr, Assistant Attorney General Mueller,* and *Deputy Solicitor General Bryson.*

JUSTICE SCALIA delivered the opinion of the Court.

At about 7 a.m. on June 10, 1988, four United States marshals arrived at Thomas Braxton's door with a warrant for his arrest. One of the marshals, Deputy Jenkins, knocked. There was no answer, though they could hear someone inside. Thirty minutes later the officers returned with a key to Braxton's apartment. Jenkins knocked again; and again received no answer. He unlocked the door, only to find it secured with a chain lock as well—which he broke by kicking the door open. "[C]ontemporaneous with the door opening, a gunshot was fired through the door opening. The gunshot lodged in the front door just above the doorknob. That's the outside of the front door." App. 17. The door slammed shut, and the officers withdrew. A moment later, Jenkins again kicked the door open. Another shot was fired, this too lodging in the front of the door, about five feet from the floor. The officers again withdrew, and the area was barricaded. Braxton, who had fired the shots, eventually gave himself up, and was charged in a three-count indictment with (1) an attempt to kill a deputy United States marshal (18 U. S. C. § 1114), (2) assault on a deputy marshal (§ 111), and (3) the use of a firearm during a crime of violence (§ 924(c)).

These were the facts as presented by the Government during the course of a plea hearing, pursuant to Rule 11(f) of the Federal Rules of Criminal Procedure, at which Braxton pleaded guilty to the assault and firearm counts of the indictment, and not guilty to the attempt to kill count. The pleas

were not made pursuant to any plea agreement, and the Government did not dismiss the attempt to kill count at the plea hearing. The purpose of the hearing was simply to provide a factual basis for accepting Braxton's guilty pleas.

Braxton agreed with the facts as the Government characterized them, with two small caveats, neither of which is significant for purposes of this case. Subject to those "modifications," Braxton agreed that "what the Government say[s] that it could prove [happened] happened." App. 19. With this factual basis before it, the District Court accepted Braxton's guilty pleas, specifically noting that "there is no plea agreement." *Ibid.*

Two months later, Braxton was sentenced. Relying upon a proviso in § 1B1.2(a) of the United States Sentencing Commission Guidelines Manual (1990), and over Braxton's objections, the District Court in essence sentenced Braxton as though he had been convicted of attempted killing, the only charge to which Braxton had not confessed guilt. The Court of Appeals upheld the sentence, 903 F. 2d 292 (CA4 1990), and we granted certiorari. 498 U. S. 966 (1990).

I

Ordinarily, a court pronouncing sentence under the Guidelines applies the "offense guideline section . . . most applicable to the offense of conviction." § 1B1.2(a). There is, however, one "limited" exception to this general rule, § 1B1.2, comment., n. 1, consisting of the following proviso to § 1B1.2(a):

> "*Provided*, however, in the case of conviction by a plea of guilty or *nolo contendere* containing a stipulation that specifically establishes a more serious offense than the offense of conviction, [the court shall apply the guideline in such chapter] most applicable to the stipulated offense."

Braxton's conviction was no doubt by a "plea of guilty." This case presents the questions whether it was also a convic-

tion by a plea (1) "containing a stipulation" that (2) "specifically establishes" that Braxton attempted to kill the marshals who had been sent to arrest him.   The Courts of Appeals have divided on the meaning of the first phrase, "containing a stipulation," and Braxton argues that however that phrase is read, the court below misapplied the second, "specifically establishes a more serious offense."   We consider each contention in turn.

## A

As the District Court noted, there was no plea agreement in this case.   Braxton argues that his plea did not "contai[n]" a stipulation because by "containing a stipulation," the Guidelines mean a stipulation that is part of a formal plea *agreement*.   Some Circuits to consider the question have agreed with that interpretation, believing that the "stipulation" must be part of the *"quid pro quo"* for the Government's agreement not to charge a higher offense.   See, *e. g., United States* v. *McCall*, 915 F. 2d 811, 816, n. 4 (CA2 1990); *United States* v. *Warters*, 885 F. 2d 1266, 1273, n. 5 (CA5 1989). But as the Government points out, § 1B1.2 does not by its terms *limit* its application to stipulations contained in plea *agreements*; the language speaks only of "plea[s] . . . containing a stipulation."   Since, the Government argues, any formal assent to a set of facts constitutes a stipulation, Braxton's guilty plea "contain[ed] a stipulation" upon which the court could rely in setting his base-offense level.   That was the approach of the court below.

A principal purpose for which we use our certiorari jurisdiction, and the reason we granted certiorari in the present case, is to resolve conflicts among the United States courts of appeals and state courts concerning the meaning of provisions of federal law.   See this Court's Rule 10.1.   With respect to federal law apart from the Constitution, we are not the sole body that could eliminate such conflicts, at least as far as their continuation into the future is concerned.   Obviously, Congress itself can eliminate a conflict concerning a

statutory provision by making a clarifying amendment to the statute, and agencies can do the same with respect to regulations. Ordinarily, however, we regard the task as initially and primarily ours. Events that have transpired since our grant of certiorari in the present case have focused our attention on the fact that this may not be Congress' intent with respect to the Sentencing Guidelines.

After we had granted Braxton's petition for certiorari, the Commission requested public comment on whether § 1B1.2(a) should be "amended to provide expressly that such a stipulation must be as part of a formal plea agreement," 56 Fed. Reg. 1891 (1991), which is the precise question raised by the first part of Braxton's petition here. The Commission took this action pursuant to its statutory duty "periodically [to] review and revise" the Guidelines. 28 U. S. C. § 994(o). The Guidelines are of course implemented by the courts, so in charging the Commission "periodically [to] review and revise" the Guidelines, Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest. This congressional expectation alone might induce us to be more restrained and circumspect in using our certiorari power as the primary means of resolving such conflicts; but there is even further indication that we ought to adopt that course. In addition to the *duty* to review and revise the Guidelines, Congress has granted the Commission the unusual explicit *power* to decide whether and to what extent its amendments reducing sentences will be given retroactive effect, 28 U. S. C. § 994(u). This power has been implemented in USSG § 1B1.10, which sets forth the amendments that justify sentence reduction.

We choose not to resolve the first question presented in the current case, because the Commission has already undertaken a proceeding that will eliminate circuit conflict over the

meaning of § 1B1.2, and because the specific controversy before us can be decided on other grounds, as set forth below.

B

Unlike the first question discussed above, which presents a general issue of law on which the Circuits have fallen into disagreement, Braxton's second question is closely tied to the facts of the present case. For the proviso in § 1B1.2(a) to apply, there must be not simply a stipulation, but a stipulation that "specifically establishes" a more serious offense. Thus, even assuming that Braxton's agreement to facts constituted a "stipulation" for purposes of § 1B1.2(a), unless it "specifically established" an attempt to kill under 18 U. S. C. § 1114, the sentence based upon the Guideline for that offense cannot stand.

For Braxton to be guilty of an attempted killing under 18 U. S. C. § 1114, he must have taken a substantial step towards that crime, and must also have had the requisite *mens rea*. See E. Devitt, C. Blackmar, & M. Wolff, Federal Jury Practice and Instructions § 14.21 (1990 Supp.). A stipulation by Braxton that he shot "at a marshal," without any qualification about his intent, would suffice to establish a substantial step towards the crime, and *perhaps* the necessary intent. The stipulation here, however, was not that Braxton shot "at a marshal." As the Government appears to concede, Brief for United States 19, n. 10, citing *United States* v. *Guerrero*, 863 F. 2d 245, 248 (CA2 1988), the only stipulation relevant to our inquiry is (at most) that which occurred at the Rule 11(f) hearing, since § 1B1.2 refers not to a stipulation in isolation, but to "a plea . . . *containing* a stipulation." (Emphasis added.) All Braxton agreed to at the Rule 11(f) hearing was that he shot "through the door opening [and that] [t]he gunshot lodged in the front door just above the doorknob. That [is] the outside of the front door." App. 17.

The Court of Appeals affirmed the District Court's judgment that this "specifically established" a violation of 18

U. S. C. § 1114, primarily because it believed that at least the District Court was not "clearly erroneous" in so concluding. That is, of course, the standard applied, when reviewing a sentence, to findings of fact. 18 U. S. C. § 3742(e). Determination of the meaning and effect of a stipulation, however, is not a factual finding: We review that just as we would review a determination of meaning and effect of a contract, or consent decree, or proffer for summary judgment. See, *e. g.*, *Washington Hospital* v. *White*, 889 F. 2d 1294, 1299 (CA3 1989); *Frost* v. *Davis*, 346 F. 2d 82, 83 (CA5 1965). The question, therefore, is not whether there is any reasonable reading of the stipulation that supports the District Court's determination, but whether the District Court was right.

We think it was not. The stipulation does not say that Braxton shot at the marshals; any such conclusion is an inference at best, and an inference from ambiguous facts. To give just one example of the ambiguity: The Government proffered (and Braxton agreed) that Braxton shot "through the door opening," and that the bullet lodged in the "front [of the] door." App. 17. It is difficult to understand how *both* of these facts could possibly be true, at least on an ordinary understanding of what constitutes a "door opening." One does not shoot *through* a door opening and hit the door, any more than one walks through a door opening and bumps into the door. But in any case, if one accepts the stipulation that both shots lodged in the front of the (inward-opening) door, it would be unreasonable to conclude that Braxton was *shooting at* the marshals unless it was also stipulated that the marshals had entered the room. That was not stipulated, and does not appear to have been the fact. But even if one could properly conclude that the stipulation "specifically established" that Braxton had shot "at the marshals," it would also have to have established that he did so with the intent of kill-

ing them.*   Not only is there nothing in the stipulation from which that could even be *inferred*, but the statements of Braxton's attorney at the hearing flatly deny it.

> "Of course, there is lurking in the background the allegation of an attempted murder.   You can gather from Mr. Braxton's position, and probably from [the Government's] statement of facts, that Mr. Braxton admits he assaulted someone and used a handgun, but, obviously, is not admitting he attempted to specifically murder anyone."   *Id.*, at 22.

Braxton claims to have intended to frighten the marshals, not shoot them, and that claim is certainly consistent with the stipulation before us.

We of course do not know what actually happened that morning in June, but that is not the question before us.   The only issue for resolution is whether a stipulation that at best supports two reasonable readings—one that Braxton shot across the room at the marshals when they entered, and one that he shot across the room before they entered to frighten them off—is a stipulation that "specifically establishes" that Braxton attempted to murder one of the marshals.   It does not.

The judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

---

*Since the statute does not specify the elements of "attempt to kill," they are those required for an "attempt" at common law, see *Morissette* v. *United States*, 342 U. S. 246, 263 (1952), which include a specific intent to commit the unlawful act.   "Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill."   4 C. Torcia, Wharton's Criminal Law § 743, p. 572 (14th ed. 1981). See also R. Perkins & R. Boyce, Criminal Law 637 (3d ed. 1982); W. LaFave & A. Scott, Criminal Law 428–429 (1972).