**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**William DAY, Defendant–Appellant.**

**No. 91–3432.**

United States Court of Appeals, Eleventh Circuit.

Oct. 4, 1991.

Theda R. James, Asst. Federal Public Defender, Tampa, Fla., for defendant-appellant.

Monte Richardson, Karla R. Spaulding, Edmund W. Searby, Tamra Phipps, Thomas Findley, Asst. U.S. Attys., Tampa, Fla., for plaintiff-appellee.

Before BIRCH, Circuit Judge, DYER, Senior Circuit Judge, and FULLAM *, Senior District Judge.

BIRCH, Circuit Judge:

This appeal presents for the first time in this circuit the issue of whether a sentencing court may utilize the sentencing guideline[1] associated with a defendant's actual conduct in lieu of the guideline specified for the offense charged. After defendant entered a guilty plea pursuant to a written agreement, the trial court applied the arson guideline rather than the fraud guideline in determining the appellant's base offense level. Appellant (Day) pleaded guilty to conspiracy to destroy a vessel with the intent to injure the insurer of the vessel. Day and his attorney signed a plea agreement which characterized the burning of the boat as "arson". For the reasons that follow, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After he was charged by indictment with two counts[2] arising out of the burning of a boat in order to collect insurance proceeds, Day and the government entered into a plea agreement ("the Agreement"). Pursuant to the Agreement, Day entered a guilty plea as to Count One and pledged his cooperation to the government in its effort to prosecute his co-conspirators. In return, the government recommended a two point downward adjustment under U.S.S.G. § 3E1.1 for acceptance of responsibility, and that Day be sentenced at the low end of the applicable guidelines range. The government also agreed to advise the sentencing court of the nature and extent of Day's cooperation, and to consider whether the cooperation actually received qualified as "substantial assistance" under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. The Agreement also provided that the govern-

ment would recommend that "the Court not depart upward from the applicable sentencing guideline range." R1–79–3. Additionally, the Agreement stated:

If the Court accepts the plea agreement, the government agrees not to charge defendant with committing any other federal criminal offenses known to the government that the defendant admits to prior to the time of rearraignment.

R1–79–3. The Agreement was explicit in characterizing its effect on the sentencing court:

It is understood by the parties that the Court is neither a party to or bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report ... It is further understood by the parties that the Court may impose a less severe sentence than that (if any) embodied in this agreement. It is further understood by the parties that the Court is not bound by any recommendation or request made by the parties ... as to the appropriate sentence, and the defendant may not withdraw his plea of guilty if the Court declines to follow any such recommendation or requests. The government expressly reserves the right to support and defend any decision the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

R1–79–3–4.

The Agreement continued and addressed specifically the sentencing court's discretion under the guidelines, stating: "Defendant understands that the particular sentencing guidelines, if any, applicable to this case will be determined solely by the Court." R1–79–4. Under the "Stipulated Facts" section of the Agreement, the following appears:

---

* Honorable John P. Fullam, Senior U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Hereinafter the United States Sentencing Guidelines promulgated under the Sentencing Reform Act of 1984 [18 U.S.C. § 3551 *et seq.* (1988) ] will be referred to as "guideline(s)" and "U.S.S.G.".

2. Count One: conspiracy to destroy a vessel with intent to injure the underwriter of the insurance on the vessel in violation of 18 U.S.C. § 2271; and Count Two: destruction of a vessel with intent to injure the underwriter of insurance on the vessel, in violation of 18 U.S.C. §§ 2272.

On July 7, 1988, at approximately 3:15 a.m., Day travelled alone to Hamlin's Landing Marina and attempted to set the boat on fire. Later, at approximately 4:00 a.m., Day returned to the marina with Harris, traveling in Day's vehicle for a second attempt to burn the boat. They subsequently set the boat on fire. In consideration of the *arson job,* Irwin gave Harris the choice of either $5,000 cash or approximately four ounces of cocaine for burning the vessel. Harris asked Day whether he wanted cash or cocaine for burning the boat, and Day advised that he wanted the cocaine.

R1–79–8. (Emphasis added).

. \* \* \* \* \* \*

Day admits that the above-mentioned facts can establish an 18 U.S.C. § 2771 and 2 violation. He also admits to doing so knowingly and willfully.

R1–79–9.

The United States Probation Office issued an initial presentence investigation report (PSR) on September 4, 1990, which used the guideline for fraud and deceit, U.S.S.G. § 2F1.1, to compute the base offense level for Day's crime. The Probation Office determined Day's sentencing guidelines score as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2F1.1(a)): | 6 |
| Loss $100,001 < $200,000 (U.S.S.G. § 2F1.1(b)(1)(G)) [3]: | +6 |
| More than minimal planning (U.S.S.G. § 2F1.1(b)(2)(A)): | +2 |
| Minor Participant (U.S.S.G. § 3B1.2(b)) | −2 |
| Acceptance of Responsibility (U.S.S.G. § 3E1.1): | −2 |
| Total Offense Level | 10 |
| Criminal History Category | I |
| Guidelines Sentencing Range | 6 to 12 months |

PSR at 3–4.

Thereafter, pursuant to U.S.S.G. § 1B1.2, the sentencing court directed that the PSR be amended to use the guideline section applicable to Day's conduct, arson, to compute the base offense level. An amended PSR was prepared that computed the base offense level under the arson guideline, U.S.S.G. § 2K1.4. Under the amended PSR, the probation office computed Day's sentencing guidelines score as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2K1.4(a)(2)): | 20 |
| Acceptance of Responsibility (U.S.S.G. § 3E1.1): | − 2 |
| Total Offense Level | 18 |
| Criminal History Score | I |
| Sentencing Guideline Range | 27 to 33 months |

Neither party objected to any fact stated in the amended PSR. However, Day filed a written objection to the use of U.S.S.G. § 2K1.4 to compute the base offense level, arguing that it violated the separation of powers doctrine for the court to sentence Day for acts other than those the executive branch had charged.[4] In addition, Day contended at sentencing that his true offense conduct was fraud, not arson.

At sentencing, the court found that "the true nature of the offense in this matter was arson" and, thus, that the appropriate offense guideline was U.S.S.G. § 2K1.4. R1–122–10. Section 2K1.4 provides different base offense levels predicated upon certain factors in a given case. The court found that base offense level of twenty was applicable in this case because "the vessel was docked adjacent to a major hotel at the time of the fire and, in addition, fire fighters and other emergency and law enforcement personnel responding to the fire faced a substantial risk of death or serious bodily injury." *Id.* The sentencing court afforded Day a two level reduction for acceptance of responsibility. The adjusted offense level, eighteen, applied to Day's

---

**3.** The loss range set forth in the initial PSR reflected the guidelines effective October 15, 1988. PSR at 1. Amendments effective November 1, 1989 have since altered the loss range corresponding to an offense level of 6.

**4.** Day does not present the separation of powers argument in this appeal.

criminal history category I, placed him, under the guidelines, in a sentencing range of twenty-seven to thirty-three months.

The government then made a motion that Day's sentence be reduced pursuant to U.S.S.G. § 5K1.1 because he had provided substantial assistance to the government by testifying at the trial of his co-defendants. The court granted the motion and sentenced Day to twelve months' imprisonment followed by two years' supervised release. This appeal followed.

## II. DISCUSSION

■ Our review of the sentencing court's application of the sentencing guidelines in the context of a plea agreement is *de novo. Braxton v. United States,* —— U.S. ——, ——, 111 S.Ct. 1854, 1858, 114 L.Ed.2d 385 (1991); *United States v. Worthy,* 915 F.2d 1514, 1516–17 (11th Cir.1990).

The Supreme Court recently described the interrelationship of U.S.S.G. § 1B1.2 and the guidelines dealing with offense behavior in the following manner:

> Ordinarily, a court pronouncing sentence under the Guidelines applies the "offense guideline section ... most applicable to the offense of conviction." § 1B1.2(a). There is, however, one "limited" exception to this general rule, § 1B1.2, Commentary, n. 1, consisting of the following proviso to § 1B1.2(a): "Provided, however, *in the case of conviction by a plea of guilty* or nolo contendere *containing a stipulation that specifically establishes a more serious offense than the offense of conviction, [the court shall apply the guideline in such chapter] most applicable to the stipulated offense."*

*Braxton v. United States,* —— U.S. at ——, 111 S.Ct. at 1857 (emphasis added). Thus, for U.S.S.G. Section 1B1.2(a) to apply, the case must involve a guilty or nolo contendere plea, there must be a stipulation, and the stipulation must specifically establish a more serious offense than the offense of conviction.

In this case, as in *Braxton,* the defendant pleaded guilty. Unlike *Braxton,* where no plea agreement or written stipu-

lated facts were filed, in this case there was a stipulation; Day formally stipulated to facts as a part of the Agreement. While the Court declined to decide in the *Braxton* case whether a "stipulation" within U.S.S.G. § 1B1.2(a) had to be part of a formal plea agreement, written factual statements in plea agreements uniformly have been held to be stipulations for purposes of U.S.S.G. § 1B1.2(a). *United States v. Bos,* 917 F.2d 1178 (9th Cir.1990); *United States v. Roberts,* 898 F.2d 1465 (10th Cir.1990); *United States v. Strong,* 891 F.2d 82 (5th Cir.1989); *United States v. Garza,* 884 F.2d 181 (5th Cir.1989). The only remaining legal issue, therefore, is whether the facts as stipulated in the Agreement "specifically establish[ed]" the more serious offense of arson.

In *Braxton,* the Court considered whether a stipulation specifically established an offense more serious than the offense to which the defendant pleaded guilty. The Court did not hold that the defendant must expressly agree that the stipulated facts establish the more serious offense. Rather, the Court in *Braxton* examined the facts in the stipulation to determine whether, as a matter of law, the facts provided the essential elements of the more serious offense. Because the facts in *Braxton* did not reflect any showing of the criminal intent required for the more serious offense, the Court held that the stipulation did not specifically establish the more serious offense. *Braxton v. United States,* —— U.S. at ——, 111 S.Ct. at 1859. Here, in contrast, the facts in the Agreement specifically established the more serious offense of arson, supporting the sentencing court's decision that the arson guideline, rather than the fraud and deceit guideline, should be used to compute Day's base offense level.

The facts required to the application of the arson guideline, U.S.S.G. § 2K1.4, were discussed by this court in *United States v. Worthy,* 915 F.2d 1514 (11th Cir.1990). In *Worthy,* the defendants had pleaded guilty to conspiring to interfere with the civil rights of one of their black neighbors by burning a cross in his yard. *Id.* at 1515. The guideline applicable to the crime of

conviction was U.S.S.G. § 2H1.2(a) (1989) [5]. *Id.* at 1516 n. 3. However, this court concluded that the district court should have used the guideline applicable to arson, U.S.S.G. § 2K1.4, to determine the underlying offense. We reasoned that while "the acts of the defendant did not constitute arson per se, ... nothing in section 2K1.4 or its commentary indicates that it was intended to apply only to such offenses." *Id.* at 1517. The panel further noted that from the "clear and unambiguous language [of U.S.S.G. § 2K1.4] we can conclude that the use of 'fire or an explosive to commit another offense that is a felony under federal law,' whether or not such use of fire constitutes legal arson, falls under the ambit of section 2K1.4(b)(4)." [6] *Id.* Accordingly, we remanded the case to the sentencing court for application of U.S.S.G. § 2K1.4 to establish the underlying offense for the U.S.S.G. § 2H1.2(a) computation.

The Ninth Circuit also has held that U.S.S.G. § 2K1.4 is applicable in a case which is factually similar to this case. In *United States v. Bos*, 917 F.2d 1178 (9th Cir.1990), the defendant conspired to blow up his failing record and tape store in order to recover under an insurance policy. *Id.* at 1180. He failed in his attempt to destroy the store, despite two efforts at burning the building down and one attempt to blow it up. *Id.*

The defendant in *Bos* pleaded guilty to one count of mail fraud and stipulated to the facts concerning his attempts to destroy the building in order to collect the insurance proceeds. *Id.* The defendant did not expressly agree that the stipulated facts constituted arson. Nevertheless, the district court sentenced him using the arson guideline, U.S.S.G. § 2K1.4, rather than the mail fraud guideline, U.S.S.G. § 2F1.1. The court did so based upon U.S.S.G. § 1B1.2(a) because, in the district court's view, "the stipulated facts amounted to arson." *Id.*

The Ninth Circuit in *Bos* affirmed the district court's application of the arson guideline in that factual setting. In addition to U.S.S.G. § 1B1.2(a), the *Bos* court observed that an application note to the fraud guideline supported use of the arson guideline. It quoted the following language from that application note:

> In certain ... cases, the mail or wire fraud statutes ... are used primarily as jurisdictional bases for the prosecution of other offenses. For example, a state arson offense where a fraudulent insurance claim was mailed might be prosecuted as mail fraud. Where the indictment or information setting forth the count of conviction (or a stipulation as described in § 1B1.2(a)) establishes an offense more aptly covered by another guideline, apply that guideline rather than § 2F1.1

U.S.S.G. § 2F1.1, application note 13, *quoted in*, *United States v. Bos*, 917 F.2d at 1181. Thus, even though the crime in *Bos* did not affect interstate or foreign commerce, an element of the federal arson statute, the court held that the arson guideline was appropriately applied because it established a "state law offense of arson ... sufficient to allow the application of the arson guideline." 917 F.2d at 1181.[7]

In this case, the facts contained in the Agreement establish arson as defined by Florida law. Under Florida law arson is defined as willfully and unlawfully damaging by fire or exploding any structure. Fla.Stat. § 806.01(2). Florida law defines a

---

5. U.S.S.G. § 2H1.2 pertained to conspiracy to interfere with civil rights. Since the *Worthy* decision, it has been consolidated with U.S.S.G. § 2H1.1.

6. Although the defendant in *Worthy* was sentenced one week after the effective date of U.S.S.G. § 2K1.7, which section applies to violations of 18 U.S.C. § 844(h), use of fire or explosive devices in the commission of a federal felony, the new provision was not applied to the defendant in *Worthy* because it would have sub-

jected him to an increased sentence. 915 F.2d at 1516 n. 7.

7. The *Bos* court rejected the argument that under the plea agreement the defendant was entitled to be sentenced only for the conduct of conviction. The court noted that "[e]ven if both the appellant and the government had assumed that the mail fraud guidelines applied, such a mutual mistake of law is not grounds for invalidating the plea bargain." 917 F.2d at 1182.

structure for purposes of Section 806.01 to include "any vessel [or] watercraft." Fla. Stat. § 806.01(3). Thus, because Day admitted to knowingly and willfully damaging a structure, the boat, by fire for the purpose of defrauding an insurance carrier, he admitted to facts that specifically established the more serious offense of arson.

■ Day also argues that because the sentencing court did not find this to be an atypical case, it was inappropriate to use a guideline section other than the one applicable to the offense to which he pleaded guilty. The "atypical case" language is found in the introduction to Appendix A of the guidelines. Read in context, this introduction provides, "If, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted. (*See* § 1B1.2.)" This introduction does not require the sentencing court to make a finding that a case is "atypical" in order before U.S.S.G. § 1B1.2(a), concerning a stipulation establishing a more serious offense than the offense of conviction, may apply.

■ In the instant case the sentencing court correctly determined that under U.S.S.G. § 2K1.4, Day's base offense level was 20. The sentencing court relied upon facts developed by the probation office after entry of the plea in computing the appropriate base offense level under U.S.S.G. § 2K1.4. In *Braxton* the government conceded that determination of more serious offense behavior must be made on the facts before the court at the time the plea is entered. *Braxton v. United States,* —— U.S. at ——, 111 S.Ct. at 1858. U.S.S.G. § 2K1.4 provides three different base offense levels. A level of twenty-four is applicable where the offense "created a substantial risk of death or serious bodily injury to any person" or in the case of destruction of a dwelling. U.S.S.G. § 2K1.4(a)(1). A level of twenty applies if the offense "created a substantial risk of

death or serious bodily injury to any person other than a participant in the offense; ... involved the destruction or attempted destruction of a structure other than a dwelling; or ... endangered a dwelling...." U.S.S.G. § 2K1.4(a)(2). The offense level under the fraud guideline, U.S.S.G. § 2F1.1, or the property damage guideline, U.S.S.G. § 2B1.3, plus two is applicable in all other cases to which section 2K1.4 pertains. U.S.S.G. § 2K1.4(a)(3).

Here, the sentencing court found that the level of twenty applied in this case because firefighters and other emergency personnel who responded to the fire faced a substantial risk of death or serious bodily injury and because the boat was docked near a hotel. The Agreement did not state that the boat was docked next to the hotel and that emergency personnel other than firefighters responded to the blaze. It did provide, however, that the firefighters responded and extinguished the fire on the boat. Thus, the sentencing court was correct that firefighters responding to fire face a substantial risk or death or serious bodily injury. *See United States v. Wilson,* 927 F.2d 1188, 1190 n. 4 (11th Cir. 1991). Accordingly, even if the facts about the hotel and other emergency personnel responding to the fire are disregarded, ample facts are available to support the sentencing court's conclusion that the base offense level was twenty because there was a substantial risk of death or serious bodily injury to the firefighters on the scene. Such a finding is not clearly erroneous. Under these circumstances, the sentencing court correctly used the arson guideline, U.S.S.G. § 2K1.4, to determine Day's base offense level and correctly applied that guideline in calculating Day's offense level. The sentence imposed upon Day is AFFIRMED.