10 F.3d 810
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Randy Lee RAY, Defendant-Appellant.
 No. 93-6022.
 United States Court of Appeals, Tenth Circuit.
 Nov. 24, 1993.
 ORDER AND JUDGMENT[1]
 
 1
 Before ANDERSON, TACHA and GARTH,[2] Circuit Judges
 
 
 2
 Randy Lee Ray entered a conditional guilty plea under Fed.R.Crim.P. 11(a)(2) for the sexual exploitation of a minor. 18 U.S.C. 2252(a)(3)(B). Ray appeals the district court's denial of his motion to suppress evidence and his motion to dismiss the indictment. Ray also appeals his sentence.
 
 
 3
 As the basis of his appeal, Ray contends that: (1) the search warrant was invalid because it sought evidence placed by an agent of the government, was based on evidence gained from an illegal search, and lacked specificity and particularity with respect to the items sought; (2) his prosecution for possession with intent to sell a videotape that depicted a minor engaging in sexually explicit activity violated the ex post facto prohibition since the video was produced prior to the passage of the statute; and (3)the district court's upward departure in sentencing was based on an improper consideration of conduct barred from prosecution by the statute of limitations and was in derogation of the sentencing guidelines and due process.
 
 
 4
 We affirm.
 
 I. BACKGROUND
 
 5
 On June 8, 1992, Detective Jo Ann Patterson of the Altus, Oklahoma, Police Department was dispatched to the apartment of a woman who had contacted the police after viewing a videotape that she thought depicted a rape. When Patterson arrived at the apartment, the informant showed her two videotapes and played one of them on her VCR so the detective could view it. Although she did not play the second tape, the informant indicated it was a duplicate of the one viewed.
 
 
 6
 The video depicted a female who stated that her name was Lisa and that she was fifteen years old. It also depicted a male whom the detective recognized as Randy Ray. The video showed scenes of Ray forcefully raping the female.
 
 
 7
 When Patterson asked how the informant had obtained the tapes, the informant said that she had taken both tapes from Ray's motel room at the Falcon Inn in Altus. The informant indicated that she had an ongoing relationship with Ray, which included staying with him from time to time. She had a key to his motel room, kept some clothes there, showered there, and occasionally slept there. She told Patterson that she had taken the tapes so she and another boyfriend could view them. Although she believed the tapes contained pornographic material, she had not known they showed Ray or criminal activity. Once she saw the tapes, she became concerned and called the police. She also told Patterson that she was afraid Ray would discover that she had taken the tapes, so instead of turning both tapes over to Patterson, she kept one to return.
 
 
 8
 During that interview, the informant stated that there were about twelve additional tapes in Ray's motel room, one showing scenes of bestiality and one showing sadistic scenes. She also reported that Ray told her he had produced videos of himself and his ex-wife involved in sexual intercourse.
 
 
 9
 On June 10, 1992, Patterson returned to the informant's apartment to ask additional questions about the videotape she had been given and about the other videotapes inside Ray's motel room. At that time, the informant advised Patterson that she had returned the tape depicting the rape and had taken four other tapes. Two of those tapes were commercially produced pornography, and two were of Ray and his ex-wife having intercourse. Patterson took the latter two. The informant also reported that Ray told her he had a video of himself having sex with a sixteen-year-old girl who had been a baby-sitter during his marriage.
 
 
 10
 On June 12, 1992, Detective Patterson presented the examining magistrate an affidavit for search warrant. The affidavit for probable cause included the underlying circumstances of her interviews with the informant, a description of the video which the detective had viewed, the informant's other statements concerning Ray's possession and production of child pornography, and the detective's own knowledge and conclusions as an experienced investigator of child pornography crimes.
 
 
 11
 Based on her affidavit, the magistrate ordered that the following items be seized:
 
 
 12
 1) a video tape depicting scenes of sexual intercourse between Randy Ray and a female under the age of eighteen years.
 
 
 13
 2) A video tape depicting scenes of sexual intercourse between Randy Ray and a female who states her name is Lisa and that she is fifteen years of age.
 
 
 14
 3) A video tape containing depictions of sado masochistic abuse.
 
 
 15
 4) Any records, telephone numbers, or mailing lists, pertaining to the purchase or sale of hard core pornographic materials.
 
 
 16
 On June 12, 1992, the Altus Police Department executed the search warrant at Ray's motel room. Along with other items, the officers seized three copies of the videotaped rape and a catalogue and price list which described the rape video.
 
 
 17
 At the suppression hearing, the district court found that: (1) the informant was not an agent for the government; (2) the affidavit contained probable cause to believe child pornography would be found in the defendant's room; and (3) the search warrant and affidavit for the search warrant were specific and particular for the items sought to be seized.
 
 
 18
 In denying Ray's motion to dismiss the indictment, the court found that the indictment did not present an ex post facto problem because the act with which Ray was charged did not occur at a time when such conduct was legal. The court reasoned that the illegal act charged was not the act of manufacturing the videotape, or of transporting the blank tape from one state to another, or of producing the visual depiction, all of which allegedly occurred in 1985. The illegal act charged was the possession of the videotape, with the intent to distribute it, which act allegedly occurred in 1992.
 
 
 19
 In imposing its sentence, the district court followed the recommendation of the presentence report for an upward departure. Ray objected to the upward departure and was overruled. He now appeals.
 
 II. DISCUSSION
 
 20
 In an appeal of the denial of a defendant's motion to suppress evidence, our standard of review is to accept the trial court's finding of facts, unless clearly erroneous, and to consider the evidence in the light most favorable to the government. United States v. Franco, 981 F.2d 470, 471 (10th Cir.1992). The ultimate determination of reasonableness, however is a conclusion of law that we review de novo. Id.
 
 
 21
 The district court found that the informant was not an agent of the government. (R. Vol. II, at 59.) The court found that the informant was an invitee, with free access to Ray's room and its contents. Id. The court further noted that the informant did not act at the instance or request of the government when she returned one of the videotapes. Rather, "she returned this tape to the defendant's apartment for fear that he would discover that she had taken it." Id. The mere fact that she informed the detective that she intended to return one of the tapes did not make her conduct intrusive.
 
 
 22
 In making its finding, the district court applied the inquiry we have previously framed for determining whether a private person has become an agent of the government; that is, "1) whether the government knew of and acquiesced in the intrusive conduct, and 2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends." Pleasant v. Lovell, 876 F.2d 787, 797 (10th Cir.1989). Ray proffers no facts to contradict the court's finding, but instead argues that the facts which were considered should have been interpreted differently. Since we are unable to discern any basis to conclude the court erred in its findings, this argument fails.
 
 
 23
 The district court then held that the detective's detailed description of the tape she viewed was sufficient to establish probable cause. The additional statements made by the informant provided further probable cause to believe that Ray was engaged in criminal activity and that evidence of that activity would be found in his motel room. Nonetheless, Ray asserts that the original information resulted from an illegal search by a government agent, and therefore the "fruit of the poisonous tree" doctrine should apply. The court's finding that the informant was not a government agent is fatal to this contention.
 
 
 24
 Finally, by selectively referencing the warrant and affidavit, Ray argues that the affidavit and search warrant lacked specificity and particularity. Ray's selection ignores the detailed description of the rape video as well as the description of the books and records based on the knowledge and experience of the detective regarding the type of business records that the described video would generate. In upholding the validity of the warrant, the district court correctly applied two well-established principles: the great deference accorded magistrates and the strong presumption in favor of admitting evidence seized by warrant. United States v. McKneely, No. 93-4019, 1993 U.S.App. LEXIS 26177, at * 27-29 & nn.7, 8 (10th Cir. Oct. 8, 1993). We therefore hold that the search was reasonable.
 
 
 25
 As his second basis of appeal, Ray argues that the prosecution violated the ex post facto prohibition, Article I, Section 9, Clause 3 of the United States Constitution. Our review of a question of constitutional law is de novo. United States v. Angulo-Lopez, No. 92-6370, 1993 U.S.App. LEXIS 27726, at * 2-3 (10th Cir. Oct. 26, 1993).
 
 
 26
 Title 18, U.S.C. 2252(a)(3)(B) was enacted in 1990 and provides a criminal penalty for:
 
 
 27
 (a) Any person who--
 
 
 28
 (3)(B) knowingly sells or possesses with intent to sell any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means ... if--
 
 
 29
 (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
 
 
 30
 (ii) such visual depiction is of such conduct.
 
 
 31
 Ray does not dispute that the video he possessed depicts a minor engaging in sexually explicit conduct. Among the books and records seized was a catalogue and price list which described that video. Notwithstanding his possession of and intent to sell the video in 1992, Ray argues that he cannot be prosecuted because the video was produced in 1985, before it became illegal to sell such materials. Ray relies on the section's descriptive words "which was produced" to show a clear intent that production be an element of the crime.
 
 
 32
 Obviously, any visual depiction which is sold, whether legally or illegally, has to have been produced. The immediately preceding section, 18 U.S.C. 2251, establishes a criminal penalty for persons who produce depictions like Ray's video. Ray was not prosecuted under that section; he was prosecuted under 2252(a)(3)(B) which prohibits the possession of such depictions "with intent to sell."
 
 
 33
 "As in any case of statutory interpretation, we begin with the plain language of the law." United States v. Morgan, 922 F.2d 1495, 1496 (10th Cir.), cert. denied, 111 S.Ct. 2803 (1991). It is not the production, already illegal at the time 2252(a)(3)(B) was enacted, but rather the sale or possession with intent to sell such material that is the gravamen of the indictment against Ray. In 1992, two years after the relevant section was passed, Ray had ample notice that his possession with intent to sell the videos was criminal. Accordingly, the prosecution resulting from Ray's criminal activity does not violate the ex post facto prohibition.[3]
 
 
 34
 Finally, Ray argues that the court was precluded from using the rape of a child as a basis for upward departure in sentencing. The appellate review of a sentence is governed by 18 U.S.C. 3742(f). In Williams v. United States, the Supreme Court set forth a two-part inquiry for reviewing departure: first, was the sentence imposed in violation of law or as a result of an incorrect application of the Guidelines, and second, is the sentence reasonable? 112 S.Ct. 1112, 1120 (1992). Prior to Williams, the Tenth Circuit established a three-step process to review upward departures: (1) de novo review of whether the circumstances cited by the district court justify a departure from the guidelines; (2) clearly erroneous review of the factual determination underlying the decision to depart; and (3) reasonableness review of the degree of departure. United States v. White, 893 F.2d 276, 277-78 (10th Cir.1990). In United States v. Flinn, 987 F.2d 1497, 1500 (10th Cir.1993), we reaffirmed the White analysis since it is consistent with the Supreme Court's approach. United States v. Kelly, 1 F.3d 1137, 1139 (10th Cir.1993).
 
 
 35
 However, since Ray does not dispute the court's factual determination of rape or the degree of departure, we need look only to the single issue on which he expressly requests review under White: Was the departure justified?[4]
 
 
 36
 The district court cited the rape of a child as a circumstance which would justify a departure from the base guideline to a guideline more commensurate with that behavior. Ray assails this determination, arguing that Braxton v. United States, 111 S.Ct. 1854 (1991), bars the use of a guideline for an offense more serious than the one charged unless the defendant has stipulated to the more serious offense. However, Braxton limited its holding to the lower court's specific use of U.S.S.G. 1B1.2(a) concerning stipulations, and is not on point for this case. See Braxton, 111 S.Ct. at 1858.
 
 
 37
 Ray was convicted of a crime under 18 U.S.C. 2252(a)(3)(B). The statutory index for this crime references U.S.S.G. 2G2.2. Application Note 5 under section 2G2.2 of the guidelines expressly considers sexual abuse as a basis for upward departure:
 
 
 38
 If the defendant sexually exploited or abused a minor at any time, whether or not such sexual abuse occurred during the course of the offense, an upward departure may be warranted. In determining the extent of such a departure, the court should take into consideration the offense levels provided in 2A3.1, 2A3.2 and 2A3.4 most commensurate with the defendant's conduct....
 
 
 39
 United States Sentencing Commission, Guidelines Manual, 2G2.2, comment. (n.5) (Nov.1992). Ray argues that this Application Note does not apply because the cross reference at section 2G2.2(c) is the exclusive avenue for increasing his offense level:
 
 
 40
 (c) Cross Reference
 
 
 41
 (1) If the offense involved causing ... a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, apply 2G2.1 ... if the resulting offense level is greater than that determined above.
 
 
 42
 Id. 2G2.2(c).
 
 
 43
 In fact, the district court did follow the cross reference to section 2G2.1 and then departed on the basis of section 5K2.0. The district court made it clear that whether he used the finding of sexual abuse (rape) to move directly to section 2A3.1 based on the Application Note, or whether he followed the cross reference to section 2G2.1 and then used the finding of rape to depart upward based on section 5K2.0, he would arrive at the same sentencing result. Thus, even if there were an error in methodology, it would be harmless because the district court would have imposed the same sentence under either approach. Williams v. United States, 112 S.Ct. at 1121.
 
 
 44
 Nonetheless, Ray argues that once the court moved to section 2G2.1, it could not use sexual abuse (rape) as a grounds for departure under section 5K2.0. Since sexual abuse is already considered in the original guideline Application Note, Ray asserts that its omission from guideline section 2G2.1 demonstrates a deliberate intent that it not be a factor in the latter guideline. We disagree. It is precisely for such inconsistent omissions that section 5K2.0 is intended.
 
 
 45
 Also, a factor may be listed as a specific offense characteristic under one guideline but not under all guidelines. Simply because it was not listed does not mean that there may not be circumstances when that factor would be relevant to sentencing.
 
 
 46
 U.S.S.G. 5K2.0 Especially in this case, with an Application Note that recognizes the aggravating circumstance of sexual abuse under the primary sentencing guideline, it is appropriate to consider such conduct. We find that the district court's upward departure was justified.
 
 
 47
 Ray also argues that the district court's upward departure based on the videotaped rape violated his due process rights because he claims that he could not have been prosecuted for rape under the relevant statute of limitations. However, a sentencing judge is authorized to take into consideration any relevant conduct that shows criminal or recidivist behavior for the purposes of imposing an appropriate sentence. U.S.S.G. 1B1.4[5] This is so regardless of whether the defendant could presently be prosecuted for such criminal conduct.
 
 
 48
 For example, prior conduct for which criminal charges have been dropped, and the prosecution of which is constitutionally barred by double jeopardy, can still be considered as relevant conduct. See, e.g., United States v. Russell, 905 F.2d 1450, 1455 (10th Cir.1990) (holding seven dismissed charges of worthless checks could be considered as relevant conduct). We have upheld a district court's consideration of criminal conduct for which a defendant was acquitted since "there was no separate punishment for the acquitted crime, only an enhancement of the sentence of the convicted crime." United States v. Garcia, 987 F.2d 1459, 1462 (10th Cir.1993), citing United States v. Johnson, 911 F.2d 1394, 1400-1402 (10th Cir.1990).
 
 
 49
 Such an approach is equally appropriate with respect to time-barred criminal conduct. The Fifth Circuit has noted that relevant conduct is not limited to the period covered by the statute of limitations. United States v. Lokey, 945 F.2d 825, 840 (5th Cir.1991).
 
 
 50
 Rather, "the sole limitation in the guidelines is that conduct be 'relevant'.... There is no separate statute of limitations beyond which relevant conduct suddenly becomes irrelevant." United States v. Moore, 927 F.2d 825, 828 (5th Cir.1991).
 
 
 51
 Ray has called our attention to no case even suggesting that conduct barred by a statute of limitations should be treated differently from other relevant conduct for which a defendant can no longer be prosecuted. We, therefore, reject Ray's argument that the sentencing guidelines and his due process rights were violated.
 
 
 52
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 The Honorable Leonard I. Garth, Senior Circuit Judge, Third Circuit Court of Appeals, sitting by designation
 
 
 [3]
 In a similar case, a defendant's conviction for receiving child pornography was not found to violate the ex post facto clause, even though his actions at the time he ordered the materials were legal. United States v. Hale, 784 F.2d 1465, 1471 (9th Cir.1986), cert. denied, 479 U.S. 829 (1986)
 
 
 [4]
 "In this appeal, Mr. Ray does not assail the district court's findings of fact or the degree of departure. Pursuant White, the focus of Mr. Ray's argument is whether the district court was justified in departing." Appellant's Brief at 18
 
 
 [5]
 1B1.4 Information to be Used in Imposing Sentence
 In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. See 18 U.S.C. 3661.
 (Emphasis added). Section 3661, Title 18 U.S.C., stipulates:
 3661. Use of information for sentencing
 No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.