**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Carlos J. VELARDE, Defendant–Appellant.**

No. 01–4102.

United States Court of Appeals, Seventh Circuit.

Submitted April 22, 2002.[*]

Decided May 15, 2002.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is

384

Before FAIRCHILD, ROVNER, and EVANS, Circuit Judges.

### ORDER

In 1989 Carlos J. Velarde was convicted of possession with intent to distribute more than five kilograms of cocaine. He was sentenced to 294 months' imprisonment. A total offense level of 34 and a criminal-history calculation of VI had produced a guideline imprisonment range of 262 to 327 months. Thirty-two offense levels were based on the quantity in Velarde's possession, and two levels were assessed because he was considered "at least a manager in this criminal activity." U.S.S.G. § 3B1.1(c). His present claim is that he "was a sole participant in the criminal activity and thus had no managerial role." If these two levels had not been assessed, the range would have been 210 to 262 months and his sentence at least 32

submitted on the briefs and the record. *See*

months shorter, or if the Judge had selected the midpoint, then 58 months shorter.

Paragraph 15 of the presentence report, "adjustment for role in the offense," determined that Velarde's role was that of manager, and referred only to the amount of cocaine in Velarde's possession. It did not identify other participants in the offense. Paragraph five, "the offense conduct," however, described how Velarde and his sixteen-year-old son, Fernando, drove from Rockford to the Midway Airport on March 20, 1989, placing the car in long-term parking, then flying to Miami, Florida, arriving at the home of Samuel Jiminez. From March 21–23 they drove north in a car which had been purchased at Velarde's behest. When nearing Chicago, they were stopped on account of a traffic offense and ultimately the cocaine was found behind a liner in the trunk of the car. Elsewhere it appears that Jiminez testified at trial that he had purchased the car at Velarde's request, and also stated (but not before the jury) that Velarde had asked him to be a middleman in the drug transaction, given him $90,000 to purchase the cocaine, and paid him approximately $1,200 for his assistance in procuring it. *See Velarde v. United States*, 972 F.2d 826, 828 (7th Cir.1992).

Thus it seems possible that Fernando or Jiminez or both were participants in the offense as aiders and abetters, acting under Velarde's supervision, and that may be the reason Velarde made no objection to the addition of two levels for being a manager and no challenge to it on appeal or in subsequent § 2255 motions. We made it very clear that "Guideline § 3B1.1 requires that the offense involve more than one participant." *United States v. Tetzlaff*, 896 F.2d 1071, 1075 (7th Cir.1990); *see also United States v. Herrera*, 878 F.2d 997 (7th Cir.1989). *Tetzlaff* was decided six weeks before oral argument on Ve-

Fed. R.App. P. 34(a)(2).

larde's appeal from his conviction and sentence. *United States v. Velarde*, 903 F.2d 1163 (7th Cir.1990).

In any event, Velarde now relies on an amendment to the Commentary to § 3B1.1 providing that to qualify for an adjustment as manager, the defendant must have been the manager of one or more other participants. *See* U.S.S.G.App. C. (amendment 500 (effective November 1, 1993)). This amendment has not been made retroactive. It states that it clarifies the section to resolve a split among the circuits, citing decisions from the First, Third, Sixth, and Ninth Circuits requiring a degree of control by the defendant over other persons for § 3B1.1 to apply, and a decision by the Fourth Circuit that a defendant may be a manager even if he did not directly supervise other persons. *See id.*

Velarde's petition now under consideration is based on 18 U.S.C. § 3582(c)(2), which authorizes a motion for reduction in sentence by a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 18 U.S.C. § 994(*o*) ... if such reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.10 of the guidelines provides that where "the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, a reduction in the defendant's term of imprisonment is authorized." The district court denied Velarde's petition after it correctly found that Amendment 500 is not listed in subsection (c). *See Ebbole v. United States*, 8 F.3d 530, 539 (7th Cir. 1993).

We observe in addition that Amendment 500 would not have lowered the range applicable to Velarde even if deemed retroactive. If, as asserted by Velarde, there was no other participant in the offense, then it was error under the pre-amendment form of the guidelines to add the two-level increase, and that error could have been corrected on appeal, as in *Tetzlaff*, 896 F.2d at 1075. The premise for reduction authorized by 18 U.S.C. § 3582(c)(2) is not error in applying the guidelines, but an amendment which lowered the previously applicable sentencing range. Amendment 500 dealt with the need for control of the defendant over other participants, on which one circuit had differed from four others, but it did not add the requirement that there be at least one other participant. As found in *Tetzlaff*, that requirement was in the guideline language at the time Velarde was sentenced. *See id.* Velarde's claim is that there was no other participants, not that there were one or more participants, but not subject to his management.

Velarde assumes that it was the amendment rather than the original guideline which caused the requirement that there be at least one other participant, and therefore he would be entitled to a reduction if the amendment were retroactive. We do not agree with his assumption. So assuming, however, he argues that the Sentencing Commission's failure to make the amendment retroactive denied him and others similarly situated the equal protection of the laws. He points to the portion of the Commentary to U.S.S.G. § 1B1.10 stating "[t]he Commission has not included in this policy statement amendments that generally reduce the maximum of the guideline range by less than six months." It could hardly be said that an amendment decreasing the offense level by two would generally reduce the maximum of the guideline range by less than six months. In the great majority of the intersections on the Sentencing Table a decrease of two levels would cause a decrease in the maximum of the sentencing range by six months or more. In Velarde's own case a

decrease from 34 to 32 levels would, at criminal-history category VI, reduce the maximum by 65 months. Thus we do not believe the Commission's decision not to make Amendment 500 retroactive could have been based on this criterion.

What seems more likely is that the Commission thought the impact of Amendment 500 would not be large enough to warrant reassessment of past cases. The amendment was intended as a "clarification." The persons who could benefit from retroactivity would only be those who had been given the increase and were associated with one or more participants, but who did not have the type of relationship described by the amendment. The courts of appeals of four circuits had already construed the guideline in a way not significantly different from the amendment. *See United States v. Fuentes*, 954 F.2d 151 (3d Cir.1992); *United States v. Carroll*, 893 F.2d 1502 (6th Cir.1990); *United States v. Fuller*, 897 F.2d 1217 (1st Cir.1990); *United States v. Mares–Molina*, 913 F.2d 770 (9th Cir.1990). The Fourth Circuit case cited by the Commission as holding that supervision of people is not necessary to be a manager found it necessary to remand for further fact finding. *United States v. Chambers*, 985 F.2d 1263, 1265 (4th Cir.1993). The Commission's power to determine whether its amendments shall be retroactive is unquestioned. *Braxton v. United States*, 500 U.S. 344, 348, 111 S.Ct. 1854, 114 L.Ed.2d 385 (1991). Under the circumstances of Amendment 500 it seems rational to deny retroactivity. We rest our decision, however, on our conclusion that Velarde could not benefit from retroactivity.

The judgment appealed from is AFFIRMED.