IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

AUGUST 1997 SESSION

FILED

September 19, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | C.C.A. NO. 01C01-9609-CR-00406 |
| | ) | |
| APPELLEE | ) | DAVIDSON COUNTY |
| | ) | |
| | ) | **Hon. Ann Lacy Johns** |
| VS. | ) | **Judge** |
| | ) | |
| THOMAS E. BRADSHAW | ) | (Attempted Second Degree Murder) |
| | ) | (Burglary of a Vehicle) |
| APPELLANT | ) | (Resisting Arrest) |
| | ) | (Evading Arrest) |
| | ) | (Criminal Impersonation) |

FOR THE APPELLANT:

**JEFFREY A. DEVASHER**
**J. MICHAEL ENGLE**
Assistant Public Defenders
1202 Stahlman Building
Nashville, Tennessee 37201

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General and Reporter

**EUGENE J. HONEA**
Assistant Attorney General
450 James Robertson Parkway
Nashville, Tennessee 37203

**SHARON BROX**
**ROGER MOORE**
Assistant District Attorneys General
Washington Square Building, Suite 500
222 Second Avenue, North
Nashville, Tennessee 37201

OPINION FILED:_____

AFFIRMED:

**JOE H. WALKER, III**
**Sp. JUDGE**

<u>OPINION</u>

The appellant was convicted by a jury of attempted second degree murder, burglary of a motor vehicle, resisting arrest, evading arrest, and criminal impersonation.

The appellant was sentenced to eighteen years, as a multiple offender for attempted second degree murder; three years six months as a multiple offender for burglary, consecutive to the sentence for attempted second degree murder; six months for resisting arrest, concurrent; 11 months and 29 days for evading arrest, concurrent; and six months for criminal impersonation, concurrent. The effective sentence is twenty-one years, six months as a Range II, multiple offender. No fine was assessed.

### Issues

Appellant presents three issues for review. (1) Appellant contends that the evidence is insufficient, as a matter of law, to support the convictions of attempted second degree murder, and criminal impersonation. (2) That the trial court committed reversible error in declining to instruct the jury on the offense of attempted reckless homicide as a lesser included offense of attempted second degree murder. (3) That the trial court imposed excessive sentences for attempted second degree murder and burglary of a motor vehicle, and the trial court committed error by imposing partial consecutive sentences.

For the reasons stated herein, the judgment of the trial court is **affirmed**.

### Facts

On August 3, 1995, at about 10:00 p.m., the victim, Richard McMullan, and his friend, Gayla York, were returning to his truck which was parked in Riverfront Park, in Nashville.

As they approached the parking lot, the victim noticed that the "camper top lid" on his truck was "up." He was concerned about his carpentry tools and his guitar, which he had left in the truck, and went to the back of the truck to check and see if anything had been stolen. He found the appellant climbing out of the back of the truck.

2

McMullan tried to shove the appellant back in the truck in an attempt to hold him until the police could be called. The appellant managed to climb out of the truck, and he and McMullan began to struggle. The victim testified that his assailant could have run off after he exited the truck if had wanted to run instead of fighting. During the course of the struggle, the victim realized that his hand had been cut pretty badly. He began acting defensively in an effort to keep the appellant from cutting him again.

When the police arrived, the appellant fled. The victim had been cut on his hand, his arm, and stabbed in the stomach. His arm was raining blood.

Officer Jones testified that she was in the area responding to the call regarding the appellant--then a suspect in the stabbing--in her marked police car when she encountered the appellant. She said that she and the appellant made "eye contact," and the appellant then fled. She then activated the blue lights in her car and chased the appellant on foot. She yelled to the appellant "stop," but he continued to run. Other officers, including officers on foot and in patrol cars joined in the chase. The appellant was cornered in a dead-end alley, and had been ordered to surrender. He continued trying to find a way out of the alley.

He did not obey the officers' instructions when they attempted to arrest him, and they had to use force to put him on the ground and handcuff him. It took three officers to restrain the appellant. The appellant was covered in blood and sweating profusely.

The appellant was placed in a police car and driven back to the scene. The officer advised the appellant of his Miranda rights. The appellant asked Officer Antle why he was being arrested, and Officer Antle told him that he was a suspect in a stabbing, to which the appellant responded: "I didn't cut nobody, I was just scrapping with him." One officer identified the appellant as the suspect she pursued in response to the call she received giving a description of the suspect. Ms. York identified the appellant as the man she saw fighting with Mr. McMullan and as the man who was brought to the scene by the police.

The appellant told Officer Antle that his name was "James Huey Thomas," and he refused to give the officer any other information. The appellant eventually revealed his true identity to Detective Frank Pierce.

3

The victim was cut and stabbed. He had a puncture wound to the stomach; and a wound to the arm that severed a nerve and required a nerve graft. The victim has not been able to return to his work as a carpenter nor has he been able to resume playing the guitar, which was his other vocation.

## Sufficiency of the Convicting Evidence

When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per app. denied (Tenn. 1990).

This court does not reweigh or re-evaluate the evidence when called upon to determine the sufficiency of the evidence, nor may this court substitute its inferences for those drawn by the jury from circumstantial evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); Liakas v. State, 199 Tenn. 298, 305; 286 S.W.2d 856, 859 (1956).

A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). For this court to reverse a jury verdict of guilty on the basis of insufficiency of the evidence, the facts contained in the record and the inferences which may be drawn from the facts must be insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Matthews, 805 S.W.2d 776, 780 (Tenn. Crim. App.) per app. denied (Tenn. 1990).

The appellant challenges the sufficiency of the evidence for two of his convictions: attempted second degree murder, and criminal impersonation.

4

*Attempted Second Degree Murder*

Second degree murder is the knowing killing of another.  T.C.A. 39-13-210 (1990).  Criminal attempt includes when one acts with the kind of culpability otherwise required for the offense, and acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.  T.C.A. 39-12-101(a)(3).

T.C.A. 39-12-101(b) provides that conduct does not constitute a substantial step under subdivision (a)(3) unless this person's entire course of action is corroborative of the intent to commit the offense.

The appellant contends that the evidence presented to the jury does not support a finding by a rational fact finder that the conduct of appellant constituted a substantial step in the commission of a knowing killing.    This court disagrees.

The appellant was caught in the back of the victim's truck.  The victim attempted to shut the topper lid to detain the appellant  until the police could arrive.  The appellant proceeded to quickly climb out of the truck, and at that time could have run away.  Instead, the appellant scuffled with the victim and cut his hand.  The victim realized that the appellant had cut him, and he began trying to keep him from cutting him again.  The victim raised his hands up trying to keep his face protected.  The appellant continued cutting the victim, stabbing him in the stomach, and cutting his arm severely.  The appellant did not stop his attack until the police arrived with the blue lights on the patrol car activated, and at that time the appellant ran.

One of the wounds inflicted by the appellant on the victim was a stab or puncture wound to the victim's stomach; another was a stab or cut  to the arm that severed a nerve; another was to the hand.  The victim testified he had five or six cuts to his body.  Due to the nature of the injuries inflicted on the victim, the jury could infer that the appellant successfully disposed of a weapon while fleeing, and before he was apprehended by the police.  There was evidence presented from which the trier of fact could determine that the appellant attacked the victim with a weapon capable of inflicting deadly wounds, that the appellant intentionally cut and stabbed the victim

5

numerous times, wounding him seriously. The jury could determine from the facts that appellant's course of action is corroborative of the intent to commit a knowing killing.

*Criminal Impersonation*

The appellant alleges that the evidence was not sufficient for the jury to have found him guilty of criminal impersonation.

Criminal impersonation is defined in T.C.A. 39-16-301(a)(1) as follows: a person commits criminal impersonation who, with intent to injure or defraud another person: (1) assumes a false identity.

After the appellant had been apprehended, he was placed in a police car. When he was in the police car with an officer who was trying to fill out an arrest report, the officer asked appellant his name. The appellant replied that his name was "James Huey Thomas." When asked his date of birth, he refused to give the date of birth. He then replied he was not telling the officer anything other than his name. He told the officer he could look up the other information.

Appellant maintains that there was no evidence that the he attempted to injure or defraud the officer by assuming a false identity. Alternatively, appellant submits that the conviction of criminal impersonation should not stand because the police did not rely upon the defendant's misrepresentation of his identity.

In State v. Brooks, 909 S.W.2d 854 (Tenn. Crim. App. 1995), the defendant gave a false name when he was arrested. The Court held that to establish the offense of criminal impersonation, the State is not required to show proof of why the defendant sought to defraud the police, only that he intended to misrepresent his true identity. From that fact the jury could conclude that the defendant acted with the intent to defraud.

A similar argument was made by the appellant in State v. White, No. 02C01-9501-CC-00025, filed September 20, 1995, (Tenn. Crim. App. 1995). The defendant asserted that the evidence was insufficient since there was no evidence that he intended to injure or defraud the police by giving them a false name, and the police quickly determined that the defendant was in fact giving false information. This Court found the evidence sufficient, and held that the jury was entitled to conclude that the

6

appellant intended to misrepresent his identity to the officer, and that was sufficient for the jury to find that the appellant intended to "defraud" the officer. The fact that the false name was quickly discovered does not vitiate the criminal intent which the appellant had when he gave the false name to the officer.

The evidence in this case is sufficient to support the finding by a rational trier of fact that appellant is guilty of attempted second degree murder beyond a reasonable doubt, and guilty of criminal impersonation beyond a reasonable doubt.

This issue is without merit.

### Attempted Reckless Homicide as a Lesser Included Offense

Appellant requested that the trial court charge attempted reckless homicide as a lesser included offense of attempted second degree murder. The trial court refused, and the appellant asserts that was error.

Tenn.Code Ann. Section 40-18-110(a)(1990) requires trial judges to instruct the jury on lesser included offenses.

An offense is necessarily included in another if the elements of the greater offense include, but are congruent with all the elements of the lesser. Howard v. State, 578 S.W.2d 83, 85 (Tenn. 1979).

A prerequisite to a jury instruction on a lesser included offense is that the offense must be encompassed by the wording of the indictment, in order to ensure adequate notice to the defendant of the offenses for which he is called upon to answer. State v. Smith, 627 S.W.2d 356, 357 (Tenn. 1982). Tenn. Code Ann. Section 40-18-110 only requires a jury instruction on all reasonable lesser included offenses.

The indictment, Count One, charged that the appellant did knowingly attempt to kill Richad McMullan, in violation of Tenn. Code Ann. Section 39-12-101...

Reckless homicide is defined as the reckless killing of another. T.C.A. 39-13-215.

7

Under Tennessee Law, a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to the result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. Tenn. Code Ann. 39-11-106(a)(20). A person may act knowingly when the person acts intentionally.

An attempt to commit a knowing or intentional act is a specific intent crime. An attempt, by nature, is a failure to accomplish what one intended to do. Attempt means to try; and it means an effort to bring about a desired result. The concept of attempt seems necessarily to involve the notion of an intended consequence, for when one attempts to do something one is endeavoring or trying to do it. Hence, an attempt requires a desired, or at least an intended, consequence. The nature of an attempt, then, is that it requires a specific intent. State v. Kimbrough, 924 S.W.2d 888, 890 (Tenn. 1996).

Although murder may be committed without an intent to kill, **attempt** to commit murder requires a specific intent to kill. Braxton v.United States, 500 U.S. 344, 351, 114 L.Ed.2d 385, 111 S.Ct. 1854 (1991).

The reckless killing of another is not an intentional act. A reckless act requires the actor to disregard a substantial and unjustifiable risk, which disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise. See, T.C.A. 39-11-106(a)(31).

Recklessness and negligence are incompatible with desire or intention. State v. Kimbrough, supra, at 891.

The trial court properly declined to charge attempted reckless homicide as a lesser included offense of attempted second degree murder.

This issue is without merit.

### Whether the Sentences were Excessive

### Whether Consecutive Sentences were Proper

The appellant conceded at the sentencing hearing that he should be sentenced

as a Range II offender. Attempted second degree murder is a Class B felony. Tenn. Code Ann. Section 39-12-107; T.C.A. 39-13-210. A Range II offender for a Class B felony can be sentenced within the range of twelve years to twenty years. T.C.A. 40-35-112. Burglary of a motor vehicle is a Class E felony. Tenn. Code Ann. Section 39-14-402. A Range II offender can be sentenced or a Class E felony from two years to four years. Tenn. Code Ann. 40-35-112.

The appellant received a sentence of eighteen years on his conviction for attempted second degree murder; three years and six months on his conviction for burglary of a motor vehicle; and the maximum sentence for each misdemeanor conviction. The trial court further ordered that the sentences for attempted second degree murder and burglary of a motor vehicle be served consecutively to one another. The misdemeanor sentences were to be served concurrently.

The appellant contends that the trial court imposed excessive sentences on his convictions for attempted second degree murder, and burglary of a motor vehicle; and further that the trial court erred in ordering consecutive sentences of these counts.

When an accused challenges the length and manner of service of a sentence, it is a requirement of this court to conduct a de novo review on the record, with the presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. 40-35-401.

In conducting a de novo review of the sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the pre-sentence report, (c)the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. Section 40-35-103, and 210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per app. denied (Tenn. 1987).

The trial court specified the enhancement factors that were applied in

9

determining the length of the sentences, but the court failed to specify which enhancement factors applied to attempted second degree murder, and which enhancement factors applied to burglary of a vehicle. Thus, the statutory presumption of correctness afforded by Tenn. Code Ann. Section 40-35-401(d) does not apply. State v. Ashby , 823 S.W.2d 166, 169 (Tenn. 1991).

This Court will address each enhancement factor without a presumption of correctness.

The trial court found the following enhancement factors:

(1) the appellant had a previous history of criminal behavior and convictions in addition to those necessary to establish the appropriate range.

(6) the personal injuries inflicted upon the victim are particularly great.

(8) the appellant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;

(9) the appellant possessed or employed a deadly weapon during the commission of the offense.

With regard to the sentence for attempted second degree murder, the four enhancement factors would apply. The appellant had a previous history of criminal behavior and convictions in addition to those necessary to establish the Range II for which he was sentenced. (Factor One)

The personal injuries that were inflicted upon the victim were particularly great. (Factor Six). The trial court made specific findings that the personal injuries were extensive, both in the immediate sense in terms of pain and suffering, and the time it took to heal; and in addition, the fact that the victim will never be whole. The injuries placed the victim in a position where he could not perform his vocation, nor could he perform his avocation, and put the victim in a situation where it is difficult for him to even support himself, let alone enjoy working and enjoy his avocation of music. The trial court found that the deliberate acts of the appellant had denied the victim for the rest of his life his ability to work at his former vocation, and denied him his ability to

10

enjoy his avocation of music.

The trial court found that there was more than one instance in the defendant's criminal history where he had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community (Factor Eight). This was evident from the information in the pre-sentence report.

The trial court also determined that the defendant possessed a deadly weapon during the commission of the offense. (Factor Nine). While the appellant complains that no weapon was found, the circumstantial evidence was strong that the appellant was employing a deadly weapon in his attack upon the victim.

With regard to the sentence imposed by the trial court for the burglary of a vehicle, enhancement factors one, that the appellant had a previous history of criminal behavior and convictions; and enhancement eight, that the appellant had a previous history of unwillingness to comply with the conditions of sentencing involving release into the community, would apply.

The trial court reviewed the mitigating factors and found that none apply. This court finds that none of those mitigating factors set out in Tenn. Code Ann. 40-35-113 applies.

*Consecutive*

The trial court ordered the sentences imposed to be served consecutively. The trial court found that the appellant was a dangerous offender within the meaning of Tenn. Code Ann. Section 40-35-115(b)(4).

An accused qualifies as a dangerous offender when his behavior indicates little or no regard for human life, and he has no hesitation about committing a crime in which the risk to human life is high. While the appellant qualifies as a dangerous offender, that fact, standing alone, will not justify consecutive sentencing. In State v. Wilkerson, 905 S.W.2d 933, 938-39 (Tenn. 1995), the Supreme Court stated that the imposition of

11

consecutive sentences on an offender found to he a dangerous offender requires, in addition to the application of general principles of sentencing, the finding that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed.

The trial court found that the appellant is a dangerous offender. The trial court further found that the actions of appellant had a grave effect on the victim, putting the victim in a situation where it is difficult for the victim to support himself, and making the victim unable to enjoy working, and unable to enjoy his avocation of music.

This court is of the opinion consecutive sentences should be imposed to prevent the appellant from harming someone else, and that an extended sentence is necessary to protect the public against further criminal conduct by this appellant.

In addition, appellant qualifies for consecutive sentencing under T.C.A. 40-35-115(b)(2), the preponderance of the evidence establishing that the appellant is an offender whose record of criminal activity is extensive. He has a prior history of felony convictions. He has a prior history of misdemeanor convictions. In addition, the appellant has been arrested a number of other times. He has had his probation revoked, and he has had parole violated.

This court is of the opinion that the sentences imposed are justified giving the number of enhancement factors established by the evidence, the circumstances of the offenses, and the remaining factors which this court must consider in conducting a de novo review. The length of the sentences and the manner of how the sentences are to be served are affirmed.

This issue has no merit.

The trial court is **affirmed**.

_____
JOE H. WALKER, III
Sp. JUDGE

CONCUR:

12

_____
JOE G. RILEY, JUDGE


_____
J. CURWOOD WITT, JR., JUDGE