IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 15, 2002 Session

## STATE OF TENNESSEE v. KENNETH ANTHONY HENDERSON

**Appeal from the Criminal Court for Davidson County**
**No. 95-D-2609    Seth Norman, Judge**

_____

**No. M1999-00547-CCA-R3-CD - Filed April 11, 2002**

_____

The Defendant, Kenneth Anthony Henderson, was convicted by a jury of second degree murder, attempted second degree murder, and aggravated assault. The trial court merged the attempted second degree murder and the aggravated assault convictions. The Defendant was sentenced to twenty-three years for the murder, and to eleven years for the attempted murder, with the terms to run consecutively. In this direct appeal the Defendant raises two issues: whether the evidence in support of his murder conviction is sufficient, and whether the trial court erred in failing to instruct the jury on certain lesser-included offenses. Finding that the trial court committed reversible error in failing to charge certain lesser-included offenses, we reverse the Defendant's convictions and remand this matter for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Kenneth Anthony Henderson.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Jon Seaborg, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The State's proof established that, around lunchtime on May 22, 1995, Ricky Peebles, Solomon Harris, Terrance Carter, and Taurus Cook went to a storage facility on Dickerson Road in Nashville for the purpose of moving some furniture that Cook had stored there. Peebles was driving a U-Haul truck, and Harris was riding with him in the passenger seat. Cook was driving Peebles' Chevrolet Caprice and Carter was in the passenger seat with Cook. There was a pistol under Carter's seat, which Cook told Carter about when they arrived at the storage facility.

When they arrived, Cook backed into a parking space located near the storage facility's office. Peebles parked the U-Haul a little ahead of and perpendicular to the Caprice. As Peebles sat in the cab of the truck adjusting the radio, he saw in the side mirrors a white car behind the truck. At least two men, including the Defendant, got out of the white car and began firing guns at the Caprice. Peebles then heard a voice ask, "what do you want to do with the mother f-----s in the U-Haul?" Peebles heard the Defendant answer, "Kill the mother f-----s." At that point, Peebles testified, he and Harris jumped out of the truck and ran for their lives. Peebles testified that he knew the Defendant, having worked for him previously.

Carter's videotaped preliminary hearing testimony was introduced at trial because he had since been shot and killed by the police during a bank robbery. According to Carter, he and Cook were sitting in the Caprice when a white car pulled up. Four to five persons were in the car. Cook opened his door and took two or three steps toward the white car. The driver of the white car opened his door, reached out over the top of the hood, and shot Cook. Cook fell and the Defendant got out of the passenger side of the white car and began shooting at Carter. Carter grabbed the pistol under his seat and jumped out of the car and began running. Carter testified that he never fired his gun, but a shell casing was found on the floor of the Caprice that matched the pistol Carter retrieved. Carter ran across the street and into a field, dropping his pistol along the way. He testified that the Defendant continued to shoot at him as he ran away. Carter stated that Cook also had a gun, but never got it out. Carter did not know any of the men in the white car, but recognized the Defendant from a photographic line-up. Carter identified the Defendant as the man who shot at him.

John A. Grimes was in the storage facility's office when the shooting occurred. He testified that he saw the U-Haul truck pull up; from his view, he was looking at the front of the truck. He saw the driver of the truck get out and start toward the back. Suddenly, the driver came running back up and then ran through the bushes and over a fence that bordered the parking lot. He also saw the truck passenger running away. Grimes testified that he saw a white car behind the U-Haul with four or five people in it. Grimes resumed talking to the office manager and then heard what sounded like marbles hitting the front of the building. Grimes looked out the window and saw that people in the white car had gotten out. He saw two men with guns, and saw one of them shooting in the direction of Grimes' car, which was parked next to the Caprice. Seeing the gunfire, Grimes got down. When he looked back, he saw the white car pulling out while three men were getting back into it: the two men with guns and one other man. When Grimes went to look at his car, he saw someone on the ground between his car and the Caprice. This man was trying to crawl into the Caprice and was saying that he had been shot.

Cook sustained a single gunshot wound to the abdomen, which proved fatal. The bullet was recovered from Cook's body.

Police recovered from the scene a fully loaded .357 pistol that had blood on it, found near the Caprice; a 9 mm. shell casing found in the Caprice; and fourteen other 9 mm. shell casings found in two areas near the Caprice. Two live rounds were also found at the scene. A 9 mm. pistol holding a round in the chamber and seven rounds in the magazine was found in the field across which Carter

ran; Carter acknowledged that this gun was the one he had retrieved from beneath the car seat. The shell casing in the Caprice was determined to have been fired from this pistol. The other fourteen shell casings had been fired from two different guns, but the guns from which they were fired were not recovered. The bullet recovered from Cook's body was not matched to any gun found during the investigation. The .357 was determined to have been unfired, and no .357 shell casings were found on the scene. Detective Pat Postiglione testified that his investigation indicated that Cook had been holding this gun "at some point after he was shot." The Caprice sustained three bullet holes, two through the windshield.

Bobby Scales testified that he had been involved in cocaine dealing with both Cook and the Defendant. On the day before the shooting, Scales witnessed an argument between the Defendant, a man nicknamed "Donut," and Cook. Scales testified that the Defendant was angry at Cook for dealing cocaine with Scales instead of himself. The next morning, Scales testified, the Defendant called Scales and asked to speak to Cook. Scales stated that the Defendant and Cook had several phone conversations that morning, and that they were negotiating a time to meet at the storage facility. Scales testified that Cook had a gun when he left to go to the storage facility.

Lottie Draper, the Defendant's mother, testified that the Defendant had lost one of his legs at the knee in the 1980s, and used a prosthesis. She also testified about the limp with which the Defendant walked, and the difficulties in movement the Defendant's disability caused.

William Trotter testified on behalf of the Defendant, explaining that he had been driving on Dickerson Road when he saw "a couple of [his] friends into a little squabble." Trotter pulled over and witnessed the shooting. He stated that he saw Scales, Carter and Cook sitting in a red car. A man named Shake was in a white car. Shake and Scales got out of their cars and fired guns at each other; Carter shot once from inside the car and then got out and ran. Trotter then saw another man get out of the red car, who appeared as though something was wrong with him. Trotter did not see the Defendant at the scene.

Trotter testified on cross-examination that he met the Defendant a couple of months prior to the trial, while they were in jail. After he asked the Defendant why he was in prison, Trotter told the Defendant that he knew the Defendant had not done the shooting. On rebuttal, the State introduced proof that Trotter was in jail on May 22, 1995, the day of the shooting.

Eddie Wren also testified on behalf of the Defendant, stating that he had been driving down Dickerson Road when he heard shooting. He stopped his car and, he testified, "saw a man walking up on another guy, just shooting him while he was laying on the ground." This man, he stated, did not limp. He saw another man leaving the scene with "a running limp."

**SUFFICIENCY**

The Defendant initially contends that the evidence adduced at trial is not sufficient to support his second degree murder conviction. Tennessee Rule of Appellate Procedure 13(e) prescribes that

"[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Second degree murder is defined as the knowing killing of another. See Tenn. Code Ann. § 39-13-210(a)(1). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Id. § 39-11-302(b).[1] The proof at trial established that the Defendant and at least one other person acting with the Defendant opened fire on Cook and Carter. As a result of this attack, Cook was shot and killed. Whether or not the Defendant fired the bullet that killed Cook is irrelevant: "A person is criminally responsible for an offense committed by the conduct of another if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Id. § 39-11-402. Taken in the light most favorable to the State, the evidence adduced at trial established that the Defendant arrived at the scene of the crime with several other people. The Defendant and at least one of these other people then fired multiple shots at Cook and Carter. The shooting took place in broad daylight. There is no doubt that the Defendant and his cohorts' actions were deliberate and intended to kill their victims. They succeeded with victim Cook, shooting him once in the abdomen. When they were finished shooting at the men in the Caprice, one of the Defendant's cohorts asked the Defendant what he wanted done with the men in the U-Haul. The Defendant responded, "Kill the mother f-----s," indicating that the Defendant and others in the white car were acting in concert.

---

[1]Our supreme court has recognized that second degree murder is a result-of-conduct offense. See State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000).

The evidence is therefore sufficient to support the Defendant's conviction for the second degree murder of Taurus Cook. This issue is without merit.

## LESSER-INCLUDED OFFENSES

The Defendant also contends that the trial court "erred in refusing to instruct the jury on the lesser-included offenses such as [v]oluntary [m]anslaughter." At trial, the Defendant requested the judge to instruct the jury on "all the lesser includeds for homicide, and all the lesser includeds for attempted homicide." The trial court refused to instruct the jury on any lesser-included offenses other than second degree murder and attempted second degree murder.

Trial courts are under a duty to '"instruct the jury on all lesser-included offenses if the evidence introduced at trial is legally sufficient to support a conviction for the lesser offense."' State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999) (quoting State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999)). This duty exists even absent a request from the defendant. Id. In Burns, our Supreme Court adopted a new three-part test for determining whether an offense is a lesser-included offense. See 6 S.W.3d at 466-67. Under the new test, which was largely derived from the Model Penal Code, an offense is a lesser-included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>> (1) a different mental state indicating a lesser kind of culpability; and/or
>> (2) a less serious harm or risk of harm to the same person, property or public interest; or
> (c) it consists of
>> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id. The Defendant in this case was charged with first degree premeditated murder and criminal attempt to commit first degree premeditated murder.[2] Under Burns, the lesser-included offenses of

---

[2]The Defendant was also charged with, and convicted of, aggravated assault by use of a deadly weapon. See Tenn. Code Ann. § 39-13-102(a)(1)(B).

first degree premeditated murder include second degree murder; voluntary manslaughter; reckless homicide; and criminally negligent homicide. See id.; Tenn. Code Ann. §§ 39-13-210, -211, -215, -212. The lesser-included offenses of attempt to commit first degree premeditated murder are attempt to commit second degree murder, attempt to commit voluntary manslaughter, and misdemeanor reckless endangerment. See State v. Rush, 50 S.W.3d 424, 426 (Tenn. 2001).[3] Thus, we must determine whether the trial court erred in failing to instruct the jury on the lesser-included offenses of voluntary manslaughter, reckless homicide, and criminally negligent homicide; and attempted voluntary manslaughter and misdemeanor reckless endangerment.

Our supreme court has recently held that, where an offense is determined to be a lesser-included offense under part (a) of the Burns test, an instruction on the lesser offense is, as a general rule, warranted. See State v. Allen, __ S.W.3d __, __, 2002 Tenn. LEXIS 76, *11-12 (Tenn. 2002). Our supreme court reasoned that this general rule applies to Burns (a) lesser-included offenses because, "[i]n proving the greater offense the State necessarily has proven the lesser offense because all of the statutory elements of the lesser offense are included in the greater." Id. at *12.

As set forth above, first degree premeditated murder is the "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). Voluntary manslaughter is a lesser-included offense of first degree premeditated murder, but under part (b) of the Burns test rather than part (a). See State v. Rush, 50 S.W.3d at 430 n.7; State v. Sims, 45 S.W.3d 1, 21 app. (Tenn. 2001). The general rule set forth in Allen, then, does not apply with respect to this lesser-included offense. To determine whether the trial court erred in failing to charge this offense, we turn to the two part inquiry set forth in Burns:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

6 S.W.3d at 469. Thus, in order to determine whether the trial court erred in refusing to charge the jury on the lesser-included offense of voluntary manslaughter, we must determine whether any evidence exists that reasonable minds could accept as to this lesser- included offense.

Voluntary manslaughter is an "intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational

---

[3]There are no offenses of attempted reckless homicide and attempted criminally negligent homicide in Tennessee. See generally State v. Kimbrough, 924 S.W.2d 888, 891(Tenn. 1996) (citing with approval the statement in Braxton v. United States, 500 U.S. 344, 351 (1991), that, "[a]lthough murder may be committed without an intent to kill, attempt to commit murder requires a specific intent to kill.")

manner." Tenn. Code Ann. § 39-13-211(a). Thus, to support a jury instruction on voluntary manslaughter, the proof must support findings that the accused committed the killing while in a "state of passion" and that the passion resulted from "adequate provocation." The proof in this case supports neither of these elements. (Indeed, the Defendant's theory of defense at trial was not that he acted in a state of passion, but that he was not present at the scene.) Carter testified that the Defendant got out of the passenger side of the white car and began firing his gun at Carter after the driver of the white car shot Cook and Cook fell to the ground. While the record contains proof that Carter fired his pistol while still in the Caprice, there is no proof that Carter fired upon the Defendant before the Defendant began firing upon him. Nor is there any proof in the record that anyone in the Caprice threatened the men in the white car, brandished their weapons at the men in the white car, or began shooting at the men in the white car immediately before they were fired upon. In short, there is simply no proof in the record that the Defendant was provoked in any fashion by either Cook or Carter. Furthermore, there is absolutely no proof in the record that the Defendant shot at Cook and/or Carter while in a state of passion. While there was proof in the record that the Defendant had argued with Cook the day before, there is no indication that the Defendant shot at Cook and/or Carter while in a rage sufficient to cause a reasonable person to act in an irrational manner. Rather, the proof supports the State's characterization of this shooting as an "ambush." Accordingly, the trial court committed no error in refusing to instruct the jury on the lesser-included offense of voluntary manslaughter. Cf. State v. James Wesley Osborne, No. E1999-01071-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 437 (Knoxville, June 14, 2001) (where defendant was charged with and convicted of first degree premeditated murder, trial court did not err in refusing to instruct the jury on voluntary manslaughter where the Defendant argued that the victim's death was accidental and no evidence was presented that the victim's death was the result of adequate provocation); State v. Robert Lee Pattee, No. M2000-00257-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 329 (Nashville, May 3, 2001) (where defendant charged with and convicted of first degree premeditated murder, the trial court did not err in refusing to instruct the jury on voluntary manslaughter where the defendant provided no evidence that his actions in killing the victim were the result of adequate provocation).

We turn now to the lesser-included offenses of reckless and criminally negligent homicide. Reckless homicide is the "reckless killing of another." Id. § 39-13-215(a). "When recklessness suffices to establish an element, that element is also established if a person acts intentionally or knowingly." Id. § 39-11-302(a)(2). Thus, reckless homicide is a lesser-included offense of first degree premeditated murder under part (a) of the Burns test, because all of its statutory elements are included within the statutory elements of premeditated murder. Similarly, a person commits criminally negligent homicide when he or she causes a death by engaging in criminally negligent conduct. See id. § 39-13-212(a). "When the law provides that criminal negligence suffices to establish an element of an offense, that element is also established if a person acts intentionally, knowingly or recklessly." Id. § 39-11-302(a)(2). Thus, criminally negligent homicide is also a lesser-included offense of first degree premeditated murder under part (a) of the Burns test. Under Allen, then, we conclude that it was error for the trial court not to charge the jury as to the lesser-included offenses of reckless homicide and criminally negligent homicide.

We must now determine whether the trial court's error was harmless beyond a reasonable doubt. See State v. Ely, 48 S.W.3d 710, 727 (Tenn. 2001). Reversal is required unless we conclude "beyond a reasonable doubt that the error did not affect the outcome of the trial." Allen, __ S.W.3d at __, 2002 Tenn. LEXIS 76, at *16. In making this determination, we must "conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." Id. at *22. We must further keep in mind our supreme court's admonition that "[t]he trial court must provide an instruction on a lesser-included offense supported by the evidence even if such instruction is not consistent with the theory of the State or of the defense. The evidence, not the theories of the parties, controls whether an instruction is required." Id. at *11.

Upon our thorough review of the record, we cannot conclude beyond a reasonable doubt that the trial court's failure to instruct the jury on the lesser-included offenses of reckless homicide and criminally negligent homicide did not affect the outcome of the trial. Although the evidence was more than sufficient to have supported a verdict of first degree premeditated murder and attempt to commit first degree premeditated murder, the jury in this case chose to convict the Defendant of the only lesser offenses charged: second degree murder and attempt to commit second degree murder. It is certainly conceivable that, given the option, the jury would have chosen to convict the Defendant of even lesser offenses. Given the number of bullets fired at the scene, and given that only one bullet struck a victim, the jury might reasonably have concluded that the Defendant was merely trying to frighten a competitor in the drug trade, and killed Cook through recklessness or negligence. Accordingly, we must reverse the Defendant's conviction of second degree murder and remand this matter for a new trial.

We turn now to whether the trial court erred in failing to charge the jury on attempted voluntary manslaughter and misdemeanor reckless endangerment as lesser-included offenses of attempted first degree premeditated murder. For the same reasons we concluded that no instruction was necessary on voluntary manslaughter with respect to the murder charge, we conclude that no instruction was necessary for attempted voluntary manslaughter. We reach a different conclusion, however, with respect to misdemeanor reckless endangerment.

Our supreme court has held that misdemeanor reckless endangerment is a lesser-included offense of attempted second degree murder under part (b) of the Burns test. See State v. Rush, 50 S.W.3d at 432.[4] We must therefore determine whether there is a rational basis for a jury charge on misdemeanor reckless endangerment, which requires reckless conduct placing another person in danger of death or serious bodily injury. See Tenn. Code Ann. § 39-13-103(a). Given that we have concluded that the proof supports a jury instruction on reckless homicide with respect to Cook's death, and recalling that Burns requires us to view the evidence liberally in the light most favorable to the existence of the lesser-included offense, we are constrained to conclude that the proof likewise supports a charge of misdemeanor reckless endangerment with respect to the Defendant's shots at

---

[4]As such, it is also a lesser-included offense of attempt to commit first degree premeditated murder.

Carter. Furthermore, for the same reasons we cannot conclude beyond a reasonable doubt that the trial court's error in failing to charge reckless homicide did not affect the outcome of the case, we cannot conclude beyond a reasonable doubt that the trial court's error in failing to charge misdemeanor reckless endangerment did not affect the outcome of the case. Accordingly, the Defendant's conviction of attempted second degree murder must be reversed and this matter remanded for a new trial.

In sum, we conclude that the trial court committed no error in failing to instruct the jury as to the lesser-included offenses of voluntary manslaughter and attempted voluntary manslaughter. However, we further conclude that the trial court committed reversible error in failing to instruct the jury on the lesser-included offenses of reckless homicide and criminally negligent homicide with respect to the murder charge, and on the lesser-included offense of misdemeanor reckless endangerment with respect to the attempted murder charge. Accordingly, we reverse and remand for retrial the Defendant's convictions of second degree murder and attempted second degree murder. Because the trial court merged the Defendant's aggravated assault conviction into the attempted second degree murder conviction, and because we are reversing and remanding the attempted second degree murder conviction, the Defendant is also subject to being retried on the charge of aggravated assault. This matter is therefore remanded for retrial on charges of second degree murder, attempted second degree murder, aggravated assault, and all necessary lesser-included offenses as may be required based upon the evidence presented during the trial.

_____
DAVID H. WELLES, JUDGE